UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————— )
UNITED STATES OF AMERICA,                  )
                                           )
        v.                                 )        Criminal No. 02-0323 (PLF)
                                           )
VENUS D. BALDWIN,                          )
        a/k/a TALISHA JOHNSON,             )
KEITH D. BEARD,                            )
TERRANCE C. FONTANELLE,                    )
STEVEN C. MACK,                            )
TERENCE TOLLIVER, and                      )
                                           )
        Defendants.                        )
———————————————————————— )

MEMORANDUM OPINION

_____After carefully considering the arguments of counsel, both those presented in

their extensive written submissions and at the two-day sentencing hearing, as well as the

testimony presented by defendant Venus Baldwin at both the sentencing hearing and her

bond revocation hearing, and after reviewing the testimony at the trial of this case, the Court

makes the following findings and reaches the following legal conclusions which will be

supplemented by an oral ruling at sentencing on September 28, 2005:

        1.  The burden of proof to be applied on all issues at the sentencing in this case

under United States v. Booker, 125 S. Ct. 738 (2005), and the Fifth and Sixth Amendments

to the United States Constitution, will be proof by a preponderance of the evidence, except

with respect to (a) acquitted conduct (if it may be considered at all), where the standard

would have to be proof beyond a reasonable doubt (see United States v. Coleman, 370

F.Supp.2d 661, 668 (S.D.Ohio 2005); cf. United States v. Pimental, 367 F.Supp.2d 143, 152

(D.Mass 2005) ("To consider acquitted conduct trivializes 'legal guilt' or 'legal innocence' –

which is what a jury decides."));  (b) obstruction of justice where under the one-book rule,

the standard must be clear and convincing evidence pursuant to the law in this Circuit at the

time of the 1998 Federal Sentencing Guidelines that are applicable in this case (see United

States v. Gaviria, 116 F.3d 1498, 1518 (D.C. Cir. 1997)); and (c) commission of another

offense while on release which must be proved by clear and convincing evidence.

2.  The government has demonstrated by a preponderance of the evidence that

defendant Baldwin was a leader and organizer of the health care fraud scheme and the

money laundering conspiracy under Section 3B1.1(a) of the Federal Sentencing Guidelines,

but defendant Beard was a manager or supervisor.

3.  The government has proved by clear and convincing evidence that

defendant Baldwin committed perjury at trial, and the obstruction of justice enhancement

therefore applies under Section 3C1.1 of the Guidelines.

4.  As the Court found at the conclusion of the bond revocation hearing, the

government proved by clear and convincing evidence under 18 U.S.C. § 3148 that defendant

Baldwin committed another offense while on release pending sentencing.  Because it is

required by law that the defendant, if charged with and convicted of the new offense, will be

sentenced consecutively to the substantial sentence defendant Baldwin will receive in this

case (see 18 U.S.C. § 3147), the Court will depart upward by only one offense level under

Section 5K2.0 for the offense committed while on bond.[1]  The Court incorporates by reference its findings at the conclusion of the evidentiary hearing in connection with defendant Baldwin's bond revocation on September 8 and 9, 2005.

 5.  The amount of loss attributable to the conduct of defendants Baldwin, Beard and Mack is $1,159,958.  The amount is not limited to the losses set out specifically in the indictment.  The government has proved at least by a preponderance of the evidence that all 20 invoices and all 18 checks (not just those listed in Counts 1 through 11 of the indictment), totalling $1,159,958, were involved in the health care fraud scheme and money laundering conspiracy.

 6.  As evidenced by government Charts 5 and 10 and the evidence adduced at trial, Terrance Fontanelle may not have been involved in the creation of the scheme on or about April 28, 2000.  But even if his earliest involvement was on June 23, 2000, when $80,0000 was transferred from the a Not Just Computers Account to his company, F&F Systems, and $2,000 went to Fontanelle personally, those funds came from the earliest invoices involved in the scheme.  Mr. Fontanelle was involved in the scheme from that point forward, and there is no evidence that he ever withdrew.  Thus, the Court finds that the total amount of loss was foreseeable to him and the entire amount of loss is attributable to him.

 7.  Terence Tolliver was acquitted of all 11 counts of mail fraud.  In considering the amount of loss attributable to him, therefore, the Court has considered only

---

 [1]  The Court recognizes that an upward departure of three offense levels was approved by the court of appeals in similar circumstances in United States v. Fadayini, 28 F.3d 1236, 1241-42 (D.C. Cir. 1994).  The upward departure in Fadayani, however, resulted in a sentence of only 37 months.  A comparable departure would put defendant Baldwin in the 168-210 month range.

3

his role in the conspiracy to launder money and his more limited role in the health care fraud scheme.  As the evidence at trial and government Chart 10 show, defendant Tolliver first received any money related to this case on July 17, 2000, when he received $5,000 from defendant Beard.  Tolliver and Beard then opened the Yates Technology bank account on July 31, 2000.  On the same date, two checks totalling $25,000 went from Beard Trucking to Tolliver and Starlight Innovation, a company in which Tolliver was one of the four principals.  Subsequently, $56,280 was transferred from Moffat Sales Corporation (a company formed by defendant Baldwin and co-conspirator David Jackson) to Yates Technology and then in August 2000 from Yates to Beard. On August 14, 2000, $50,000 was transferred from Yates to Starlight and $16,000 was transferred from Yates to Tolliver. The evidence at trial showed that all of this laundered money came from Kaiser checks. From these facts, it appears that Tolliver may not have entered the money laundering conspiracy until July 17, 2000.  Based on the scope of criminal activity Tolliver thereby jointly agreed to undertake, the Court concludes that the amount of loss reasonably foreseeable to him, and thus attributable to him for purposes of sentencing, was $771,911.

       8.   Neither defendant Fontanelle nor defendant Tolliver has demonstrated that he was a minor or minimal participant in the conspiracy to launder money or, in Fontanelle's case, the mail fraud and health care fraud schemes, and the evidence at trial shows that they were not.  Defendant Beard is not entitled to a downward departure for acceptance of responsibility under Section 3E1.1 of the Guidelines.  No defendant is entitled to any other departure under the Guidelines.

4

9.  As a result of these findings and conclusions, the Court makes the following guideline calculations and will consider the defendants to fall into the following sentencing ranges prior to considering any <u>Booker</u> variances under 18 U.S.C. § 3553(a):

| | | |
|---|---|---|
| Venus Baldwin | 32/II | 135-168 months |
| Keith Beard | 28/I | 78-97 months |
| Terrance Fontanelle | 25/I | 57-71 months |
| Steven Mack | 25/I | 57-71 months |
| Terence Tolliver | 24/I | 51-63 months |

10.  As noted, the Court rejects all defendants' arguments for downward departures under the Guidelines, but will consider arguments in mitigation and for <u>Booker</u> variances under 18 U.S.C. §3553(a), including in particular for defendant Baldwin what sentence below the Guideline range is "sufficient, but not greater than necessary," 18 U.S.C. § 3553(a), to serve the purposes of the sentencing statute.

11.  The parties have stipulated in a September 12, 2005 notice from the government that the amount of money still owed to the victims as a result of this fraud is $893,085.99 out of the total loss of $1,159,958.  Defendants have argued that under <u>Booker</u> the amount of restitution should be limited to $668,298.94, which is the total of the amounts alleged in the mail fraud counts for which four of the five defendants were found guilty.  For the same reasons that the Court has rejected the defendants' arguments for a higher standard of proof in sentencing for all issues except those listed in paragraph one of this opinion, the Court now rejects this argument.  Pursuant to 18 § U.S.C. 3664(e), the Court will continue to

resolve disputes as to the amount of restitution under a preponderance of the evidence standard.

        12.   The Court rejects the arguments of all defendants except defendant Tolliver that they should be responsible for less than the full amount of restitution based on any foreseeability arguments, for the reasons stated above regarding amount of loss.  Each defendant except for defendant Tolliver therefore is jointly and severally liable to the victims in this case for $893,085.99 in restitution.  Defendant Tolliver is jointly and severally liable with the other four defendants but only up to the amount of $771,911.  See 18 U.S.C. § 3664(h).  The Court orders that restitution shall be paid in the following amounts:

| | |
|---|---|
| Kaiser Foundation Health Plan, Inc. | $153,361.21 |
| Allfirst Bank | $ 39,621.00 |
| National Union Fire Insurance Co. | $700,103.78 |

In accordance with 18 U.S.C. § 3664(j)(1), all restitution must be made first to the direct victims of the fraud: Kaiser and Allfirst Bank, before restitution can be made to National Union Fire Insurance Co., as Kaiser's insurer against the loss.

        SO ORDERED.


/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: September 27, 2005